St. Louis-San Francisco Railway Company v. Albright.

Opinion delivered March 26, 1928.

1. Railroads—construction of sheds along tracks.—Under Acts 1921, c. 124, §§ 3, 4, conferring jurisdiction on the Railroad Commission in all matters relating to the regulation and operation of common carriers and requiring public service corporations to provide adequate and suitable facilities for operation of business and convenience and safety of the public, the Railroad Commission had jurisdiction to require railroads to construct sheds along their tracks for convenience of the traveling public in going to and from trains.

2. Railroads—construction of sheds.—An order of the Railroad Commission requiring railroads to construct sheds over their platforms for the use of passengers discharged from trains approximately 150 yards from the depot, held not arbitrary and unreasonable.

3. Railroads—right to require construction of sheds.—The fact that two railroads at their junction had established a union depot for the protection of passengers does not deprive the Railroad Commission of authority to order construction of sheds for the use of passengers in going to and from the trains where the trains stopped approximately 150 yards from the depot.

4. Constitutional law—due process.—An order of the Railroad Commission requiring two railroads to construct sheds along their tracks for the use of passengers in going to and from the trains, held not a taking of property without due process in violation of the Fourteenth Amendment.

5. Commerce—burden of interstate commerce.—An order of the Railroad Commission requiring railroads to construct sheds along their tracks for the use of passengers in going to and from trains, held not void as constituting a burden on interstate commerce, where the order did not fix the cost of the sheds, but left the matter open for determination of expense by the railroads on approval of the Railroad Commission.

Appeal from Pulaski Circuit Court, Second Division; *Richard M. Mann,* Judge; affirmed.

*Thomas B. Pryor, Harvey G. Combs, E. T. Miller, E. L. Westbrooke, Jr.,* and *E. L. Westbrooke,* for appellant.

*H. W. Applegate,* Attorney General, and *John L. Carter,* Assistant, for Arkansas Railroad Commission, appellee.

Humphreys, J. This is an appeal from an order of the circuit court of Pulaski County, Second Division, affirming an order of the Railroad Commission requiring appellants to erect umbrella sheds along the tracks of each of the railroads at Hoxie, where they intersect, from the depot jointly used by them to the place where the trains stop to discharge and receive passengers. Certain passenger trains on each road stop before crossing the track of the other, about 410 feet from the depot, for passengers to get on and off the train. The necessity for the Frisco trains to stop north of the Missouri Pacific tracks and for the Missouri Pacific trains to stop east of the Frisco tracks is to enable them to make one stop to use the water crane for taking water and to load and unload passengers at the same time. Otherwise certain of the trains would have to make two stops, one to take water and the other at the depot to receive and discharge passengers. The order of the circuit court appealed from is in part as follows:

"Certain citizens of the town of Hoxie filed a petition with the Arkansas Railroad Commission to require the Missouri Pacific Railroad Company and the St. Louis-San Francisco Railway Company to construct sheds along the tracks of each of the railroads for the convenience of the traveling public in going to and from trains. Testimony was heard as to the necessity of such sheds. After a hearing, the Arkansas Railroad Commission entered an order requiring each of the said railroads to construct sheds aggregating in length one thousand feet, the plans for the sheds, however, to be subsequently filed with the

Railroad Commission for its approval. The railroads have appealed from this decision.

"The order of the Railroad Commission, being a separate branch of the State Government, will not be set aside or disturbed unless it appears unreasonable or arbitrary.

"The two railroads intersect at Hoxie, and passengers leave the trains of each railroad before the train crosses the track of the other, or reaches the station. Consequently passengers going to and from the station to the trains are of necessity required to walk quite a distance. Under the circumstances of this peculiar case, in the opinion of this court, the order of the Arkansas Railroad Commission does not appear unreasonable or arbitrary. It is claimed that the construction of sheds at Hoxie would require an unreasonable outlay by the railroads, considering the results to be obtained. The matter of expense is to be determined by the railroad companies on the approval of the Railroad Commission. Considering the whole case, this court is of the opinion that the order of the Arkansas Railroad Commission is not arbitrary or unreasonable, and will therefore be affirmed."

The order of the Railroad Commission and the order of the circuit court affirming said order are assailed upon the grounds: first, that authority was not conferred upon the Railroad Commission by statute to order railroads to construct umbrella sheds over their platforms, or, to put it differently, that the Railroad Commission was without jurisdiction to order appellants to build sheds over their platforms from the depot to where they stopped certain of their trains to receive and discharge passengers; second, that the order was arbitrary and unreasonable, there being no necessity shown for the construction of the sheds; third, that the facilities already furnished are adequate; fourth, that the order of the Commission will deprive the railroads of their property without due process of law and in violation of § 1, article 14, of the Federal Constitution; fifth, that the order for the

construction of these sheds is a burden on interstate commerce, and void.

(1) Section 3 of act 124 of the Acts of the General Assembly of 1921 confers jurisdiction upon the Railroad Commission in all matters relating to the regulation and operation of common carriers and railroads; and one of the requirements in § 4 of the same act is that public service corporations shall provide and maintain adequate and suitable facilities for the operation of the business, and for the reasonable convenience and safety of the public. The sections referred to are broad enough to and do confer jurisdiction upon the Railroad Commission to require public carriers to provide such protection and convenience for its passengers.

(2) The contention that no reasonable necessity was shown by the testimony for the construction of the sheds is without merit. The distance between the depot and places where certain of the passenger trains stop to receive and discharge travelers is one hundred and fifty yards or more, and too great a distance to expect passengers to go during inclement weather. Their health and comfort are involved, and must necessarily be considered in arriving at the reasonableness or unreasonableness of the order. The testimony reflects that Hoxie is a junction of the two systems of railways, where many passengers change trains and where there are many incoming and outgoing passengers. Hoxie has about 1,500 inhabitants, and the large number of passengers debarking and embarking should have protection from rain and snow.

(3) It is true that the testimony reflects that a union depot has been built at this point, modern and adequate for the protection of passengers when once in it. The argument that adequate facilities have been furnished because such a depot has been constructed does not meet the situation at Hoxie. It would, if the trains all stopped beside or near the depot where the passengers could reach it without exposing themselves to inclement weather. The depot, however, can furnish no protection

to passengers who are compelled to go a distance of one hundred and fifty yards· before they .can board a train,· or go that distance after debarking to reach the depot. The protection required against the elements is protection afforded at the place of getting on and off trains. We think it the clear and reasonable duty of appellants to stop their trains at the depot, or else build umbrella sheds for the protection of the passengers, who are compelled to come and go one hundred and fifty yards in order to board the trains or reach the depot.

(4)   We do not understand that the requirement that public carriers build depots of ample facilities for the protection of its passengers at the place where they are received and discharged in any way conflicts with the provision of the Constitution inhibiting the taking of property without due process of law. We think the peculiar situation at Hoxie makes it just as necessary to construct the umbrella sheds as it does to construct depots. It is one of the necessary facilities to protect the passengers. The requirement of the construction of necessary facilities in the operation of the business of a public carrier is in no sense taking its property without due process of law.

(5)   The contention that the order to build the sheds will unnecessarily burden interstate commerce is without foundation in fact.   The argument is made that the cost of building the sheds will amount to $16 per lineal foot, or a total of $15,000, without benefiting any one. The order does not fix the cost of the umbrella sheds to be built. That matter is left open. The expense is to be determined by appellants, on approval of the Railroad Commission. Certainly the Railroad Commission will not require that an unreasonable amount be expended in the construction of the sheds. We cannot agree that there is no necessity for the sheds. The record reflects the necessity for them in order to protect passengers from the elements, because appellants stop certain of their passenger trains an unreasonable distance from the depot for the reception and discharge of passengers. The size of the town,

together with the fact that Hoxie is the junction of the two systems, indicates that the traffic is sufficient to justify the construction of the sheds for the protection of the passengers against the elements.

No error appearing, the judgment is affirmed.